UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WILLIAM L. SUTTON,

      Plaintiff,

v.                                                                                          Civil Action No. 2:16cv741

NANCY A. BERRYHILL,
*Acting Commissioner of*
*Social Security*,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff William L. Sutton seeks judicial review of the Commissioner of Social Security ("Commissioner")'s denial of his claim for Title II disability insurance benefits ("DIB"). Specifically, Sutton claims that the Administrative Law Judge ("ALJ")'s determination of residual functional capacity ("RFC") failed to account for his need for a cane, which Sutton claims undermines the evidence upon which the ALJ concluded he was not disabled. Sutton also claims the ALJ failed to properly consider his work history when evaluating his credibility and determining his RFC. For the reasons stated below, this report recommends that the court AFFIRM the final decision of the Commissioner by GRANTING the Commissioner's Motion for Summary Judgment (ECF No. 20) and DENYING Sutton's Motion for Summary Judgment (ECF No. 18).

### I.    PROCEDURAL BACKGROUND

On July 4, 2012, Sutton filed an application for Title II DIB. R. at 19. He alleged that he was disabled as of April 15, 2010. R. at 80. He alleged his disability was due to degenerative disc disease of the lumbar spine, carpal tunnel syndrome, and sensorineural hearing loss. R. at

21-22. The state agency denied his application initially. R. at 87-88. It did so again upon reconsideration. R. at 100. Sutton then requested an administrative hearing from the Social Security Administration ("SSA"). R. at 19. An ALJ conducted a hearing on October 15, 2015. R. at 31. Sutton was represented by an attorney. R. at 33.

The ALJ determined Sutton was last eligible for benefits under the Social Security Act on September 30, 2015, identifying this as Sutton's Date Last Insured ("DLI"). R. at 21. On November 23, 2015, the ALJ denied Sutton's claims for DIB. R. at 26. The ALJ found Sutton was not disabled between his alleged onset date of April 15, 2010, and his DLI of September 30, 2015. R. at 19, 26. The Appeals Council denied Plaintiff's request for review on November 16, 2016. R. at 1-3. Sutton timely filed the Complaint in the present action seeking review of the administrative proceedings below on January 18, 2017. Compl. at 1 (ECF No. 5).

## II. FACTUAL BACKGROUND

Sutton was born in 1961. See R. at 25. On his DLI, he was 54 years old and "closely approaching advanced age" as determined by the SSA's regulations. See 20 C.F.R. § 200-204. He completed high school and served in the U.S. Navy from 1979 to 1999. R. at 200, 206. After his retirement from military service, he worked a number of jobs in the construction, manufacturing, and trucking industries. Id. These jobs were skilled and unskilled and required medium or heavy exertion. R. at 55-56, 206. His last job was as a contract stocker, which he left in June 2011. R. at 206.

The relevant portions of Sutton's medical history are summarized here, as are the portions of the administrative proceedings below that are relevant to his arguments in this court.

a. History of Medical Treatment and Evaluation.

Sutton's medical records show he consistently described a lengthy history of back pain to his treating physicians. See, e.g., R. at 267, 268, 273, 422.

On June 21, 2010, during emergency room treatment for kidney stones, Sutton underwent a musculoskeletal evaluation; he was found to have a normal range of motion, exhibiting no edemas and no tenderness. R. at 343-44.

On August 17, 2012, Sutton sought treatment for back pain as he prepared to fly to the Philippine Islands. R. at 267. He was prescribed pain medicine. Id. The treating physician found no weakness in Sutton's lower extremities. Id. In September of that year, he again sought treatment for back pain. R. at 268. His physician noted he was walking with a cane and that he had low-back tenderness during active forward flexion and dorsiflexion. Id.

On October 9, 2012, Sutton sought treatment from Dr. Richard Guinand at The Spine Center at Chesapeake. R. at 275. Sutton had severe, sharp, and consistent lower back pain as well as left leg weakness. R. at 273. Sutton had no tenderness to palpation, intact sensation and symmetric reflexes, normal coordination and balance, full active and passive range of motion, and negative bilateral straight leg raising tests. R. at 75. An X-ray of his lumbar spine revealed good bony anatomy and alignment, lumbarization of S1, decreased disc space on L1-2 and L2-3, facet arthropathy[1] at L5-S1, and no instability on flexion and extension views. R. at 275. Although Sutton brought disability evaluation paperwork to the session, Dr. Guinand did not complete them, telling Sutton he did not perform those evaluations. R. at 275. Dr. Guinand made no reference to Sutton using a cane. See R. at 272-76. Dr. Guinand directed Sutton to

---

[1] "Facet arthropathy is a form of low back pain caused by osteoarthritis in the facet joints (also known as zygapophyseal joints) in the spine. This condition usually affects older patients as the result of wear and tear, but it can also arise from injuries to the spine or ligaments in the back." Facet Arthropathy, Hospital for Special Surgery, https://www.hss.edu/condition-list_facet-arthropathy.asp (last visited on Nov. 17, 2017).

3

physical therapy, which he would be undergoing for the first time, and prescribed tramadol, a pain-reliever. R. at 275-76.

From October to December 2012, Sutton underwent a course of physical therapy. See R. at 369-426. During his initial screening with the physical therapist, Sutton complained of chronic back pain. R. at 428. He said his pain worsened if he walked, stood, or sat for more than an hour. R. at 423. Notwithstanding his pain, he had a normal range of motion in his hips, knees, and ankles and a reduced range of motion in his lumbar spine. R. at 422-233. He used a single-point cane to walk. R. at 422. At this initial screening, his physical therapist made safe ambulation without a cane a goal of his therapy. R. at 424. During his treatment, he reported improvements and used his cane less as a result. R. at 388, 390, 378. At the conclusion of his treatment in December 2012, Sutton reported his strength and endurance for activity had improved over the course of his physical therapy. R. at 373. His physical therapist reported he had met the goal of being able to walk safely without the cane. Id.

During treatment for back pain at a Veterans Administration Medical Center, Sutton was instructed to use his cane while walking, though he told the licensed practical nurse interviewing him that he only used the cane on unfamiliar terrain. R. at 489.

In June 2013, Sutton sought treatment for lower back pain. R. at 281. His records reflect he was walking with a cane. Id. He was prescribed pain relievers again to manage his back pain. R. at 282. In August 2013, Sutton saw Dr. Maria Nguyen for pain management care. R. at 285. During the examination, he had negative bilateral leg raising, no range of motion pain in his hips, full range of motion in his legs, 5/5 leg strength, and intact sensation and symmetric reflexes. R. at 289. He had an antalgic gait, but could toe and heel walk without difficulty and did not struggle to mount the examination table. Id. He reported being able to take short exercise walks

4

and perform personal care tasks like eating, bathing, dressing, and getting up from a chair or from bed. R. at 288. He did have diminished range of motion in his lumbar spine and pain with extension, flexion, and lateral rotation. R. at 289.

b.  Agency Consultative Examination and Physician Assessments.

On February 9, 2014, Dr. Shawne Bryant examined Sutton at the request of the state agency in order to make a determination regarding Sutton's disability status. R. at 291. Dr. Bryant observed Sutton was able to walk with minimal difficulty when using a cane in his right hand. R. at 292. Without the cane, he could walk normally and heel-to-toe. Id. He could squat to 90 percent when bracing on a chair and mounted the examination table without difficulty. Id. Sutton complained of pain in his back when walking on his heels without the cane. Id. He limped on his left when walking on his toes without the cane. Id. Sutton had normal range of motion in his cervical spine and knees, and he had negative straight left raising tests. R. at 292-93. He showed diminished lumbar spine range of motion, and hip flexion caused him pain. R. at 291. Dr. Bryant, in the section of her report titled "Functional Status," opined of Sutton: "It is felt the patient would benefit from the use of his assistive device due to his back pain." R. at 293.

On May 3, 2013, and February 26, 2014, two different state agency physicians reviewed Sutton's records and each concluded Sutton could perform light work. R. at 85-88, 95-100. The 2013 assessment noted that Sutton had used a cane during an examination in September 2012, but it nonetheless concluded Sutton could still perform light tasks. R. at 83. The 2014 assessment also noted use of a cane during a visit to Sutton's primary care provider in June 2013. R. at 95. Based on Dr. Bryant's finding that Sutton could walk normally without the cane, the assessing physician concluded that "Use of a cane not entirely necessary per objective findings,

but may be helpful for extended distance walking." R. at 96. The assessment went on to opine that Sutton was not disabled. R. at 100.

c. <u>Testimony Before the Administrative Law Judge.</u>

At the administrative hearing on October 15, 2015, Sutton testified before the ALJ. R. at 33. He told the ALJ his back was in pain "constantly" and that, at its worst, the pain was "like somebody putting a knife in there and turning it." R. at 41. He testified he was using tramadol and other pain-relievers.[2] R. at 41-42. He told the ALJ he had not continued with treatment for his back pain within the two years before the hearing because he could not afford the $16 insurance co-pay for each treatment session. R. at 42, 50. He told the ALJ he could only walk 15 minutes before his back became severely painful. R. at 45-46 Sutton also told the ALJ, while answering questions from counsel, he needed his cane anytime he left the house. R. at 51. Sutton also told the ALJ he could drive short distances, cook, and do limited housework. R. at 46-47.

After hearing from Sutton, the ALJ heard testimony from a Vocational Expert ("VE"). R. at 54. The VE said a hypothetical person with limitations described by the ALJ, but not including the requirement of a cane, could perform three light exertional level jobs. R. at 57 (office helper, with 137,000 positions in the national economy; clerical checker, 68,000 positions; and inspector, 78,000 positions). When Sutton's counsel asked about the impact of needing a cane on Sutton's employability, the VE said the office helper and clerical checker jobs would remain the same but that Sutton could not do the inspector job. R. at 59. This left 205,000 positions in the national economy Sutton could perform. <u>See id.</u>

---

[2] Sutton told the ALJ he had been prescribed tramadol by an American doctor two years before the hearing. R. at 41-42. At the time of the hearing, however, he was acquiring the drug from the Philippines, where it was sold over-the-counter. R. at 42.

6

d.  Decision of the Administrative Law Judge.

The ALJ made the following findings after considering Sutton's claim:

(1) The claimant last met the insured status requirements of the Social Security Act on September 30, 2015.

(2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 15, 2010, through his date last insured of September 30, 2015.

(3) Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine with L3-L4 retrolisthesis and facet arthropathy.

. . .

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

. . .

(5) [T]hrough the date last insured, he claimant had the residual functional capacity to perform light work as defined in 20CFR 404.1567(b) except the claimant should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.

R. at 21-22 (citations omitted). The ALJ also found Sutton could not perform any past relevant work but could obtain employment in other that jobs existed in significant numbers in the national economy. See R. at 25. The ALJ based this finding on Sutton's age, his education level, his work experience, and the limitations imposed by his RFC. Id. As a result, the ALJ found Sutton had not been under a qualifying disability from his alleged onset date to the DLI. R. at 26.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and

whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. However, when articulating conclusions in a case, the ALJ must point to record evidence supporting that conclusion. See Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as

8

defined in the Act. 42 U.S.C. §§ 416(i), 423. The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

(1)  Is the individual involved in substantial gainful activity?

(2)  Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

(3)  Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

(4)  Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

(5)  Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 404.1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Lewis, 858 F.3d at 861 (citing Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016)). When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

In this case, after conducting this five-step analysis, the ALJ concluded that Sutton met the insured status requirements during the alleged period of disability, but had not been under a disability within the meaning of the Social Security Act between his alleged disability onset date, April 15, 2010, and the DLI on September 30, 2015. See R. at 21, 26.

At step one, the ALJ found Sutton had not engaged in substantial gainful activity during his alleged period of disability, April 15, 2010, through September 30, 2015. R. at 21. At step two, the ALJ found that Sutton suffered from the following severe impairments: degenerative disc disease of the lumbar spine with L3-L4 retrolisthesis and facet arthropathy. Id. At step three, the ALJ found that Sutton did not suffer from a listed impairment or combination of impairments that met the severity of one of the listed impairments. R. at 22. At step four, the ALJ found that Sutton's impairments prevented him from performing his past relevant work. R. at 25. In drawing his step four conclusion and fashioning Sutton's RFC, the ALJ determined that

Sutton had, through the date last insured, "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant should avoid climbing ladders, ropes, or scaffolds. The claimant [could] occasionally climb ramps and stairs, stop, kneel, crouch, and crawl." R. at 22. To develop the RFC, the ALJ specifically considered Sutton's assertion that he needed a cane to walk and considered that assertion against the available treatment records. R. at 22. The ALJ observed that the treatment records "showed the claimant to ambulate normally without an assistive device." R. at 22 (citing R. at 281-93 (records from primary care provider visit, treatment from pain management specialist, and evaluation by state medical consultant evaluator, Dr. Bryant). At step five, the ALJ concluded that jobs which Sutton could perform exist in significant numbers in the national economy. R. at 24-25. Consequently, the ALJ determined Sutton did not have a qualifying disability during the relevant period. R. at 26.

Sutton now argues the ALJ erred in determining his RFC and finding him not disabled. Sutton claims the ALJ should have concluded that Sutton needed a cane to ambulate and considered that limitation when determining Sutton's RFC. See Pl.'s Mem. in Supp. of Summ. J. (Pl.'s Mem.) at 9 (ECF No. 19).

a. <u>The ALJ Relied on Substantial Evidence When Making His RFC Determination that Sutton Did Not Need an Assistive Device.</u>

After reviewing the medical evidence and the ALJ's functional analysis, the court finds that the RFC is supported by substantial evidence.

An RFC is the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see SSR 96-9p, 1996 WL 374185 ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When, as is the case here, a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must determine the plaintiff's RFC. 20 C.F.R. 404.1520(e). At step

four, the ALJ then determines whether the plaintiff can perform his past relevant work. Id. § 404.1545(a)(5)(i). If the ALJ determines that the plaintiff cannot perform any relevant past work, as was the case for Sutton, the ALJ uses the RFC at step five to determine if the plaintiff can "adjust to any other work that exists in the national economy." Id. § 404.1545(a)(5)(ii).

The ALJ is responsible for determining a plaintiff's RFC at the administrative hearing level, and in making this determination, the ALJ considers all of the relevant medical and other evidence in the record.[3] Id. §§ 404.1527(b), 404.1545(a)(3), 404.1546(c). "[R]elevant evidence . . . include[es] information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The ALJ, in arriving at his determination that Sutton had an RFC that permitted him to work at jobs available in the national economy, reviewed at length the evidence presented to him. The ALJ then performed a function-by-function analysis, discussing the evidence and the weight he gave to the evidence. The ALJ assessed Sutton's statements, the recorded observations and opinions of his treating medical professionals, and the opinions of the state agency's reviewing physicians, and reached his conclusions in the light of those materials. R. at 20-24.

Specific to Sutton's alleged need for a cane, the ALJ considered Sutton's testimony that he needed one because it hurt to walk without it. R. at 23. He also considered the fact that a number of providers <u>observed</u> that Sutton walked with a cane. Id. Notwithstanding Sutton's

---

[3] "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how . . . how impairment(s) and any related symptoms affect [the claimant's] ability to work. 20 C.F.R. § 404.1529(a).

testimony and his physicians' observations that he used a cane, facts in the record persuaded the ALJ that Sutton had no medical need for the cane within the meaning of the Social Security Regulations. The first was Sutton's improvement following physical therapy such that he did not need the cane all the time. R. at 23 (citing R. at 388 (physical therapy treatment notes)). The ALJ also relied on Sutton's positive response to pain management injections. See id. (citing R. at 283-84 (treatment notes from Sentara Comprehensive Pain Management Center)). The ALJ relied further on Sutton's August 2013 negative bilateral straight-leg raise test and that, during examination, he could mount the examination table without difficulty. See id. (citing R. at 389). He also noted that the medical imaging reports Sutton offered from October 2012 were not consistent with disabling back pain that would make the use of a cane necessary. See id. (citing R. at 279).

Finally, the ALJ took note of the fact that the consultative examiner, Dr. Bryant, observed that Sutton's ambulation without the cane was normal. See id. (citing R. at 291-93)). He acknowledged Dr. Bryant's opinion that Sutton "would benefit" from walking with a cane but assigned this opinion little weight because of the evidence elsewhere in the same report that Sutton could walk normally without a cane. R. at 24 (citing R. at 291-93 (noting Sutton could walk normally without a cane, had not seen a doctor for his back pain in two years, and took pain medication at a lower dosage than when it was first prescribed).

The RFC is a description of the claimant's maximum capability. See SSR 96-9p, 1996 WL 374185 (July 2, 1996). And the ALJ determined that Sutton is able, within his maximum capacity, to walk normally without a cane. The need for an assistive device will only be included in an RFC when the need is documented in a specific way: a statement in a medical record that the claimant needs the device and a description of the circumstances in which the

device is needed (i.e. all the time, occasionally, or only in certain situations like unfamiliar terrain or long distance walking). Id. at *7. Dr. Bryant's note that Sutton would benefit from using a cane does not meet these criteria to constitute a medical opinion that Sutton needed a cane. It was therefore not error to exclude a need for a cane from Sutton's RFC determination. It is not this court's duty to re-weigh the evidence. Craig, 76 F.3d at 589. The ALJ conducted a detailed review of the medical evidence he relied upon, and Dr. Bryant's suggestion that Sutton may occasionally benefit from using a cane does not contradict—much less undermine—the ALJ's conclusion. Because Sutton's maximum ability included walking normally and because Dr. Bryant's report did not properly document a need for a cane, the RFC determination was based on substantial evidence, and remand is inappropriate.

Even if the ALJ erred in omitting the need for a cane from his RFC determination, such an error can only warrant remand if it was harmful to the claimant. See Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015).

Sutton argues the ALJ's error may have prejudiced him because there was no finding about the effect of the "Grid Rules" on his disability claim. Pl.'s Mem. at 8 (ECF No. 19). He asserts that, although the ALJ found him capable of light work, had the ALJ included the need for a cane in the RFC, that limitation may have eroded the number of light jobs available to Sutton, effectively making him suited for only sedentary work. He asserts this would be harm sufficient to justify remand.

Even though a person's limitations might make him technically capable of light work, "if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.'" SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983).

Under the Grid Rules, a person with Sutton's vocational factors who was also limited to sedentary work would qualify as disabled. See 20 C.F.R. § 404.201-203. Although the burden is on the Agency at this step of the sequential evaluation, see Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012), there was evidence in the record rebutting Sutton's suggestion that use of a cane would have required a finding of disability under the Grid Rules. The VE testified that the number of light work jobs she identified that a person with Sutton's limitations could perform in the national economy would go from 283,000 to 205,000 with the addition of a requirement for a cane. See R. at 59. There was no contradictory evidence before the ALJ. A one-quarter reduction of the occupational base could not have been considered "little more than the occupational base for the lower rule." See SSR 83-12, 1983 WL 31253, at *2. Because there was uncontradicted evidence before the ALJ that there would still have been jobs in the national economy available to Sutton that he could have performed, the ALJ's failure to consider the Grid Rules in assessing Sutton's claim was not error, and remand is not warranted.

b. The Administrative Law Judge Relied on Substantial Evidence in Deciding Not to Credit Sutton's Testimony over the Medical Evidence in Sutton's Treatment Records.

Sutton also urges the court to remand the case because, in his view, the ALJ erred by not adequately considering Sutton's work history and attempts to work when assessing his credibility. See Pl.'s Mem. at 16 (ECF No. 19). The court first notes the ALJ did include a treatment of Sutton's work record in the opinion. R. at 23, 25. The question therefore turns on whether that treatment was adequate.

The ALJ is required to consider all relevant non-medical evidence in making a credibility determination, but only to the extent such evidence "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(3). The ALJ did not find that Sutton's testimony merely lacked support from medical evidence: he found it

15

directly contradicted the medical evidence. See R. at 23-24; c.f. Lewis, 858 F.3d at 867 (ALJ must credit claimant's testimony when such testimony is not contradicted by other evidence in the record). When presented with contradictory evidence, it is the ALJ's task to consider the conflicting evidence, assess its credibility, and then decide which of the evidence in the record is most persuasive. As discussed above, the ALJ did this work and ultimately concluded that Sutton's testimony that he needed a cane was not credible in light of both the medical evidence and Sutton's own testimony regarding his daily activities. R. at 23-24.

It is a fundamental principle of judicial review of Social Security actions that the ALJ's credibility finding receives great deference. See Eldeco, Inc. v. N.L.R.B., 132 F.3d 1007, 1011 (4th Cir. 1997). A claimant's history of employment before and during the alleged period of disability can support the credibility of his testimony that he is not working because he physically cannot do so. See, e.g., Allen v. Califano, 613 F.2d 139, 147 (6th Cir.1980). However, the ALJ's mere failure to mention Sutton's work history explicitly does not warrant remand or reversal in the face of his otherwise supported findings. See, e.g., Cooper v. Astrue, 4:10cv110, 2011 WL 6742500, at *7 (E.D. Va. Nov. 8, 2011), report and recommendation adopted, 4:10cv110, 2011 WL 6749018 (E.D. Va. Dec. 22, 2011). "Plaintiff's work record, standing alone, is insufficient to contravene an ALJ's credibility finding." Id. (citing Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); Laws v. Astrue, 3:08cv722, 2009 WL 3270770, at *6 (E.D. Va. Oct. 8, 2009)). In short, work history is just one of many factors an ALJ will consider if it is relevant to his determination of the claimant's credibility.

Even if the ALJ misapplied one of the factors set forth in 20 C.F.R. § 404.1529(c), the failure to expressly address each factor set forth in 20 C.F.R. § 404.1527 is harmless error, so long as the reasoning is otherwise supported by substantial evidence. See Ambrose v. Astrue,

2:11cv683, 2013 WL 1308981, at *12 (E.D. Va. Mar. 28, 2013) (citing Morgan v. Barnhart, 142 Fed. App'x 716, 723 (4th Cir. 2005) (even if a medical opinion was due special weight under the treating-physician rule, any error in failing to credit the opinion was harmless); Boone v. Halter, 23 Fed. App'x 182, 183 n. * (4th Cir. 2002) (per curiam) (upholding Commissioner's decision and finding that to the extent the Commission failed to follow social security procedures, the plaintiff failed to show resulting prejudice); Camp v. Massanari, 22 Fed. App'x 311, 311 (4th Cir.2001) (per curiam)). The ALJ made clear that he based his credibility finding on the heavy body of objective medical evidence in the record. See R. at 23.

Moreover, "the Court is not hamstrung by the words set forth in the ALJ's decision." Ambrose, 2013 WL 1308981, at *12. "Though it may affirm only upon the reasons given, 'the reviewing court must base its decision on a review of the record as a whole and 'may look to any evidence in the record, regardless of whether it has been cited by [the Commissioner].'" Id. (quoting Baxter v. Astrue, 3:11cv679, 2013 WL 499338, at *4 (E.D. Va. Feb. 7, 2013)). Thus, even if the ALJ did not explicitly mention his consideration of Sutton's work history in making a credibility finding, the court is not necessarily required to remand. Rather, it defers to the ALJ because "it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

Although the ALJ may not have explicitly mentioned Sutton's work history in the manner Sutton would have preferred, the ALJ did consider it and, relying as well on other substantial evidence in the record, concluded that Sutton's testimony about his need for a cane was not credible. The ALJ's credibility determination was based on substantial evidence, and the court should therefore not remand the case to the Commissioner on this basis.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 20), DENY Sutton's Motion for Summary Judgment (ECF No. 18), and AFFIRM the final decision of the Commissioner.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

a. Any party may serve upon the other party and file written objections to the foregoing findings and recommendations within fourteen days from the date of service of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

b. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/ Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 7, 2017